1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SMALLWOOD,<br><br>                                    Plaintiff,<br><br>    vs.<br><br><br><br>ALLIED PICKFORDS, LLC, et al.,<br><br>                                    Defendant. | CASE NO. 08cv2196 BTM (RBB)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT ALLIED PICKFORDS'S MOTION TO DISMISS; (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS ALLIED VAN AND SIRVA'S MOTION TO DISMISS; (4) GRANTING DEFENDANT ATLAS'S MOTION TO EXTEND TIME TO RESPOND; AND (5) GRANTING PLAINTIFF AND DEFENDANTS' MOTIONS TO EXCEED PAGE LIMITS** |

        The Court has before it four motions filed in this case.  First, Plaintiff Gary Smallwood ("Smallwood" or "Plaintiff") moves to remand the case to California Superior Court.  Second, Defendant Atlas Transfer and Storage Co. ("Atlas") moves for an extension of time to respond to Plaintiff's Complaint.  Third, Defendants Allied Van Lines, Inc. ("Allied Van") and SIRVA, Inc. ("SIRVA") move to dismiss Plaintiff's Complaint.  Fourth, Allied Pickfords, LLC, ("Allied Pickfords") also separately moves to dismiss Plaintiff's Complaint.  For the reasons explained below, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant Atlas's Motion to Extend Time to Respond.  The Court **GRANTS in part** and **DENIES in part** Defendant Allied Pickfords's Motion to Dismiss and  **GRANTS in part** and **DENIES in part** Defendants Allied Van's and SIRVA's Motion to Dismiss.

# I. __BACKGROUND__

A.    Factual Background

The following facts are taken from Plaintiff's Complaint and other documents of which the Court has taken judicial notice.  The Court makes no finding as to the truthfulness of the allegations of the Complaint.

Plaintiff Gary Smallwood is a citizen of the United States.  (Compl. ¶ 11.)  Plaintiff resided in San Diego, California until September 2007, when he accepted a teaching position with Mosaica Education Abu Dhabi, LLC ("Mosaica").  (Id.)  The position required Smallwood to relocate to Abu Dhabi, the United Arab Emirates (the "UAE").  (Id.)

Mosaica allegedly referred Plaintiff to Defendant  Allied Pickfords to handle the shipment and storage of his belongings in connection with his move. (Compl. ¶ 12.)  Plaintiff intended to store some of his items in San Diego and to ship other items to the UAE. (Compl. ¶ 14.) On September 17, 2007, an Allied Pickfords representative contacted Plaintiff via email to arrange for the storage and shipment of his goods.  (Compl. ¶ 13.)  Plaintiff claims that he believed that Allied Pickfords was associated with an "Allied Movers" company in the United States.  (Smallwood Decl. ¶ 9.)  Allied Pickfords initially quoted Plaintiff a price of $2,000 to ship approximately 800 lbs. of his belongings to the UAE via air freight and an additional $5,000–$6,000 to ship his car.  (Compl.¶ 15.)

On September 25, 2007, an agent for "Allied International"[1] visited Smallwood's home and took notes regarding which belongings Smallwood wished for the company to store and which items he wanted to ship to the UAE.  (Compl. ¶ 17.)

On September 26, 2007, Allied International representatives returned to pack and remove Smallwood's possessions from his apartment. (Compl. ¶ 19.) The representatives allegedly created two lists of his possessions: (1) the "Local Household Goods Descriptive

---

[1]    Throughout his Complaint, Plaintiff refers to Defendants collectively as "Allied International."  Defendants dispute that they act as agents of one another or that they constitute a collective entity known as "Allied International."  Because Plaintiff does not differentiate Defendants throughout his Complaint, however, the Court will refer to Defendants as "Allied International" solely to describe the factual background of this case based on the allegations in Plaintiff's Complaint.

Inventory," which included Plaintiff's items to be stored, and (2) the "Descriptive Inventory," which listed the items Plaintiff wanted to ship to the UAE.  (Compl. ¶ 20.)  Plaintiff owned several weapons that he allegedly intended to store and which he claims were listed with along with the other storage items.  (Compl. ¶ 22.) The weapons were packed in a large box labeled "Firearms."  (Compl. ¶ 23.)

Sometime in or around late September to early October, Smallwood traveled to Abu Dhabi and assumed his teaching position with Mosaica.  (Compl. ¶ 29.) Plaintiff then communicated with Allied International several times during the months of October and November, 2007.  (Compl. ¶¶ 32–25.)  Once Plaintiff was living in the UAE, Allied International allegedly used "bait and switch" tactics, providing Plaintiff with more expensive quotes and informing him that they needed to ship his items via sea in a larger, more expensive container.  (Id.)  When told he would have to pay for the larger container, Plaintiff instructed Allied International to ship additional items from storage, namely, boxes labeled "books" and "study materials."  (Compl.  ¶ 36.)

On February 12, 2008, an Allied International representative contacted Plaintiff to inform him that his shipment had arrived in Abu Dhabi.  (Compl. ¶ 39.)  Plaintiff subsequently paid Allied International invoices totaling $11,874.31 for shipping costs and $5,062.84 for insurance.  (Compl. ¶ 38, 40.)

On February 25, 2008, an Allied International representative allegedly called Plaintiff and informed him that UAE customs officials had discovered a pistol in his car.  Plaintiff claims that the Allied International representative told him that he should come to the port to "straighten things out."  (Compl. ¶ 41.)  When Plaintiff arrived at the port, boxes containing his belongings, including the box labeled "Firearms," were strewn about the pier.  (Compl. ¶ 42.)  Although an Allied International representative was present at the pier when Plaintiff arrived, the representative soon left.  (Compl. ¶¶ 42–43.)  Plaintiff alleges that the representative told UAE customs officials that Smallwood directed Allied International to ship the weapons to the UAE.  (Compl. ¶ 43.)

UAE customs officials held Plaintiff for questioning for approximately one to two hours.

08cv2196 BTM (RBB)

1   (Compl. ¶ 44.)  Officials then transferred Plaintiff to the Abu Dhabi Police Station where

2   officers interrogated him for an additional five to six hours.  (Compl. ¶ 45.)  Later that

3   evening, officials transferred Plaintiff again to the New Khalidiya Police Station where officers

4   questioned him for nine to ten more hours.  (Compl. ¶ 46.)

5           On February 26, 2008, Plaintiff allegedly signed a statement, written in Arabic, based

6   on the promise that he would be released the next day.  (Compl. ¶ 49.)

7           On February 27, 2008, police transferred Plaintiff to the Al Wathba prison, where he

8   was held for eleven days.  (Compl. ¶ 50.)  Plaintiff claims that he suffered taunts from other

9   prisoners and became very ill during his incarceration.  (Compl. ¶¶ 52–53.)

10          On Sunday, March 9, 2008, Smallwood went to court and met with a criminal attorney

11  retained by Mosaica.  The judge fined Plaintiff and he returned to jail, although a colleague

12  later secured his release on the same day.  (Compl. ¶¶ 55, 59.)  Plaintiff alleges that legal

13  counsel for Allied International, Eric Baker, may have faxed a letter to the Abu Dahbi Public

14  Prosecutor's Office on March 9, 2008.  (Compl. ¶ 56.)  Plaintiff claims that the letter admitted,

15  "Our organisation [sic] in the United States, through its agents, was responsible for the

16  shipment.  We confirm that the guns and weapons that were found in the consignment were

17  sent to Abu Dhabi in error."  (Compl. ¶ 57.)

18          Smallwood later learned that he had been convicted of importing firearms and

19  ammunition without a permit. (Compl. ¶ 60.)  Consequently, Plaintiff claims that the UAE

20  authorities subsequently withheld his passport, forcing him to miss his sons' graduations in

21  the United States.  (Compl. ¶ 63.)  Smallwood also alleges that he now faces deportation

22  from the UAE as a result of his conviction.  (Compl. ¶ 62.)

23

24  B.   Procedural Background

25          On October 9, 2008, Plaintiff filed a Complaint against Defendants SIRVA, Allied Van,

26  Allied Pickfords, and Atlas in San Diego County Superior Court.  Plaintiff alleged six causes

27  of action including: (1) negligence and negligent infliction of emotional distress, (2) intentional

28  infliction of emotional distress, (3) defamation, (4) breach of fiduciary duty, (5) fraudulent

1    deceit, and (6) breach of contract.

2         On October 31, 2008, Plaintiff served SIRVA.  On November 3, 2008, service was

3    accomplished on Allied Van.  Plaintiff and Allied Pickfords dispute whether or not Plaintiff

4    accomplished service on Allied Pickfords on November 10, 2008.  On November 12, 2008,

5    Plaintiff served Atlas.

6         On November 26, 2008, Defendants Allied Van and SIRVA filed a Notice of Removal

7    in this Court [Docket No. 1].

8         On December 2, 2008, Defendants Allied Van and SIRVA filed a Motion to Dismiss

9    or Compel Arbitration [Docket No. 2].  On December 22, 2008, Plaintiff filed a Motion to

10   Remand [Docket No. 5].

11        On December 30, 2008, Atlas filed a Motion to Extend Time to Respond to Plaintiff's

12   Complaint [Docket No. 6].

13        On January 16, 2009, Allied Pickfords filed its own Notice of Removal [Docket No. 13].

14   Allied Van, SIRVA, and Atlas joined in Allied Pickfords's Notice of Removal on the same day

15   [Docket Nos. 12, 14].

16        On January 23, 2009, Allied Pickfords filed a Motion to Dismiss or Compel Arbitration

17   [Docket No. 18].

18

19                              **II. <u>DISCUSSION</u>**

20        The Court first considers Plaintiff's Motion to Remand.  Next, the Court evaluates

21   Atlas's Motion to Extend Time to Respond to Plaintiff's Complaint.  Finally, the Court

22   considers together the two Motions to Dismiss filed by Allied Pickfords and Allied Van and

23   SIRVA.

24

25   A.    <u>Motion to Remand</u>

26        Plaintiff makes two alternative arguments for remand.  First, Plaintiff contends that

27   removal was improper because the removing Defendants failed to timely remove or obtain

28   consent of all served Defendants prior to filing their notice of removal.  Second, Plaintiff

                                        5

1  argues that even if removal was procedurally proper, the removing Defendants have not

2  established federal question jurisdiction.

4       1.    <u>Procedural Requirements for Removal</u>

5       Plaintiff initially contends that the Court should remand this case because both

6  removal notices filed by Defendants failed to meet the procedural requirements of 28 U.S.C.

7  § 1446(b).  First, Plaintiff argues that the Notice of Removal filed by Allied Van and SIRVA

8  ("Removal Notice I") was procedurally defective under the "unanimity rule."  Second, Plaintiff

9  alleges that the Notice of Removal filed by Allied Pickfords ("Removal Notice II") was

10  untimely.  The Court agrees with Plaintiff that Removal Notice I was procedurally defective

11  for failure to meet the unanimity requirement.  Because the Court adopts the "last served

12  defendant rule," however, Removal Notice II timely met the procedural requirements

13  necessary under Section 1446(b).

15            a.    <u>Removal Notice I</u>

16       Any notice of removal to federal court must be filed within thirty days of service of the

17  initial pleading on the defendant.  28 U.S.C. § 1446(b).  In a multi-defendant case, all

18  defendants other than nominal parties must join in a removal petition or file written consent

19  to removal within the same thirty day period following service of the initial pleading.  <u>See</u>

20  <u>Hewitt v. City of Stanton</u>, 798 F.2d 1230, 1232 (9th Cir. 1986).  Courts refer to the statutory

21  mandate that all defendants timely consent to removal as the "unanimity rule."  <u>See</u> <u>Prize</u>

22  <u>Frize, Inc. v. Matrix (U.S.), Inc.</u>, 167 F.3d 1261, 1266 (9th Cir. 1999), <u>superseded by statute</u>

23  <u>on other grounds</u>, Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, <u>as</u>

24  <u>recognized in</u> <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676 (9th Cir. 2006).

25  Because courts construe the removal statute strictly, the removing defendant has the burden

26  of affirmatively explaining the absence of any co-defendants in a notice of removal.  <u>Id.</u>  It is

27  not necessary for the removing defendant to obtain the written consent of another defendant

28  who has not yet been served with process in the state action.  <u>Community Bldg. Co. v.</u>

1  Maryland Cas. Co., 8 F.2d 678, 678–679 (9th Cir. 1926), cert. denied, 270 U.S. 652 (1926).

2  A court may remand a case to state court upon a plaintiff's timely motion if a defendant's

3  removal notice fails to satisfy the procedural mandates of Section 1446(b).  See 28 U.S.C.

4  § 1447(c).

5       Although SIRVA and Allied Van filed Removal Notice I on November 26, 2008, within

6  thirty days of service of the initial pleading, Atlas did not file written joinder within the

7  statutorily prescribed period.[2]  SIRVA and Allied Vans attempt to affirmatively explain Atlas's

8  absence by claiming that Plaintiff had not yet validly served Atlas.  (Removal Notice I ¶ 12.)

9  In fact, Plaintiff served Atlas on November 12, 2008.  (Mazella Decl. ¶ 7.)  Courts strictly

10 construe the removal statute against removal jurisdiction.  Gaus v. Miles, Inc., 980 F.2d 564,

11 566 (9th Cir. 1992).  Although a defendant need not sign the notice of removal, he must show

12 affirmative written consent.  Myer v. Nitetrain Coach Co., Inc., 459 F. Supp. 2d 1074, 1078

13 (W.D. Wash. 2006).  Therefore, because Atlas did not timely join in or provide written

14 consent to Removal Notice I, it failed to meet the procedural requirements of Section

15 1446(b).

16

17            b.    Removal Notice II

18       Although Removal Notice I was procedurally defective, this case should remain in

19 federal court if the subsequent notice filed by Allied Pickfords on January 16, 2009 ("Removal

20 Notice II") properly effectuated removal.  To determine whether Removal Notice II satisfied

21 the procedural requirements of Section 1446(b), the Court first must ascertain whether

22 Plaintiff succeeded in his initial attempt to serve Allied Pickfords on October 31, 2008.  If

23 Plaintiff's first service attempt succeeded, then Allied Pickfords certainly filed Removal Notice

24 II outside the thirty day time limit prescribed by Section 1446(b).  For the reasons explained

25 below, however, the Court concludes that Plaintiff did not properly serve Allied Pickfords on

26 _____

27       [2]     The Court concludes below that Plaintiff had not yet validly served Allied
28 Pickfords at the time Allied Van and SIRVA filed Removal Notice I.  Thus, Allied Pickfords
   was not required to consent to removal pursuant to Section 1446(b).  See Community Bldg.
   Co., 8 F.2d at 678–679.

7

October 31, 2008.  The Court next evaluates whether to apply the "first-served" or "last-served" defendant rule.  Because the Court finds that the "last-served" rule should apply, Removal Notice II properly removed this case to federal court.

i.    Plaintiff's Service On Allied Pickfords

Plaintiff twice attempted to serve Allied Pickfords.  First, Plaintiff mailed the summons and complaint pursuant to California Civil Procedure Code § 415.40 to Allied Pickfords on October 31, 2008.    Section 415.40 permits service on an out-of-state defendant by sending a copy of the summons and complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt.

Where the defendant is a corporate entity, however, the serving party must also comply with California Civil Procedure Code § 416.10.  Cruz v. Fagor America, Inc., 146 Cal. App. 4th 488, 496 (2007).  Section 416.10 requires that the summons and complaint be delivered to "the person designated as agent for service of process . . .[or] the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process."  Cal. Civ. Proc. Code § 416.10(a)–(b).  Furthermore, when serving a nonresident pursuant to Section 415.40, the plaintiff must provide proof of service including evidence satisfactory to the court establishing actual delivery to the person served, by a signed return receipt or other evidence.  Cal. Civ. Proc. Code § 417.20(a).

Here, Plaintiff provides no evidence that his initial service on Allied Pickfords was proper.  Plaintiff only states that he mailed the summons and complaint via first class mail, return receipt requested, to an address identified on Allied Pickfords's website as one of two offices in the UAE.  (Pl.'s Mem. of P. & A. in Opp. to Def. Allied Pickfords's Mot. to Dismiss 4.)  Plaintiff does not contend that he served Allied Pickfords's designated agent or any other individual authorized to receive service under Section 416.10.  Moreover, Plaintiff admits that the summons and Complaint were returned "undeliverable" to him in early December.  (Id. at 5.)  Thus, the Court concludes that Plaintiff has not provided evidence sufficient to establish

8

1  actual delivery to Allied Pickfords.  Plaintiff's initial service attempt on Allied Pickfords was,

2  therefore, unsuccessful.

3

4                              ii.      "First-Served" and "Last-Served" Defendant Rules

5              Plaintiff's second attempt at service on Allied Pickfords occurred on December 22,

6  2008.  Allied Pickfords filed Removal Notice II within thirty days of this service, on January

7  16, 2009.  All other Defendants consented to removal on the same day.  Thus, removal was

8  proper if the Court applies the "last-served" defendant rule.  The last-served rule allows each

9  defendant an opportunity to remove within thirty days after that particular defendant receives

10  the complaint.  See McAnally Enterprises, Inc. v. McAnally, 107 F. Supp. 2d 1223, 1226

11  (C.D. Cal. 2000).  The unanimity rule still applies, and all other defendants must consent to

12  removal within the same thirty day period.

13              The "first-served" rule, however, holds that the thirty day period for removal begins to

14  run from the date of service on the *first* defendant.  See United Computer Systems, Inc. v.

15  AT&T Corp., 298 F.3d 756, 762 (9th Cir. 2002).  Therefore, if the Court applies the first-

16  served rule, Allied Pickfords did not properly remove, since the removal period ran only from

17  service on the first defendant in this case, SIRVA, on October 31, 2008.

18              The Ninth Circuit has not yet adopted either the first-served or the last-served rule,

19  and other Circuits are split as to which rule should apply.  United Computer Systems, Inc.,

20  298 F.3d at 763 n.4 (recognizing split of authority among Circuits applying first-served and

21  last-served rules and declining to express opinion on the propriety of either rule).  Similarly,

22  district courts within the Ninth Circuit disagree on which rule should control.  Bonner v. Fuji

23  Photo Film, 461 F. Supp. 2d 1112, 1117 (N.D. Cal. 2006) (listing Ninth Circuit district court

24  cases applying both first-served and last-served rules).  While some courts characterize the

25  first-served rule as the "majority" approach, others note a more recent trend toward applying

26  the last-served rule.  Id.  Having considered the reasoning of courts adopting both rules, this

27  Court concludes that the last-served rule constitutes the better approach.

28              Other courts have articulated persuasive statutory and policy considerations

                                                  9
                                                                              08cv2196 BTM (RBB)

supporting adoption of the last-served rule.  First, the plain language of Section 1446(b) indicates that each defendant should be permitted thirty days following service to exercise the right to removal.  Holding otherwise, that the time for removal commences for all purposes upon service of the first defendant, "would require [courts] to insert 'first' before 'defendant' in the language of the statute." Brierly v. Alusuisse Flexible Packaging, Inc. 184 F.3d 527, 533 (6th Cir. 1999).[3]

Second, Congress intended the removal process to protect defendants.  Allowing plaintiffs to avoid removal by serving defendants less likely to remove earlier would eviscerate that protection.  See McKinney v. Board of Trustees of Maryland Community College, 955 F.2d 924, 928 (4th Cir. 1992) (agreeing with the district court's opinion that "[Congress] did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.").  Moreover, requiring a later-served defendant to hurriedly join in an improper petition for removal could subject him to Rule 11 sanctions under Section 1446(a). Id.

Third, as other courts have noted, the first-served rule does not follow logically from the unanimity rule, as the Fifth Circuit reasoned in its decision adopting the first-served rule. See Brown v. Demco, Inc., 792 F.2d 478, 482 (5th Cir. 1986).  Rather, a first-served defendant who simply chooses not to affirmatively exercise his right to remove the case may nevertheless willingly consent to removal by a later-served defendant. See Bonner, 461 F. Supp. 2d at 1118; see also Lear v. Louisville Ladder, Inc., No. 07-CV-1404 DMS (POR), 2007 WL 2947430, at *3 (S.D. Cal. Oct. 9, 2007).  On other hand, if an earlier-served defendant prefers the state forum, he may simply refuse to consent to the later-served defendant's notice of removal. See Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 756 n. 6 (8th Cir. 2001) (noting that adoption of the last-served rule "in no way affects the rule of unanimity.  Later-served defendants seeking removal are required

---

[3]     Section 1446(b) reads: "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading . . . ."  Adopting the first served rule would require the Court to interpret the statute as mandating that the notice of removal be filed "within thirty days after the receipt by the [*first*] defendant . . . ."

to have the consent of all defendants."). "A newly added defendant should at least be afforded the opportunity to try to persuade other defendants to join in a removal petition, and the remaining defendants should not be precluded from consenting to removal." Smith v. Mailboxes, Etc., 191 F. Supp. 2d 1155, 1161 (E.D. Cal. 2002).

Fourth, the last-served defendant rule does not hinder early resolution of forum disputes. As the Fourth Circuit recognized, a plaintiff wishing to promptly determine in which forum his case will proceed needs only to ensure that he serves all defendants at about the same time. See McKinney, 955 F.2d at 927. In fact, the last-served rule may encourage plaintiffs to serve all defendants promptly and "minimize the uncertainties that may arise from later adding defendants." Smith, 191 F. Supp. 2d at 1161.

Finally, the facts of this case warrant application of the last-served defendant rule. All Defendants here clearly prefer the federal forum, as demonstrated by Removal Notice I and the prompt filing of all Defendants' consent to Removal Notice II. Furthermore, Plaintiff has not been prejudiced by any uncertainty concerning which forum the case would proceed in. Since Allied Van and SIRVA filed Removal Notice I, Plaintiff has been aware of the possibility that this case would proceed in federal court. Additionally, contrary to Plaintiff's assertions, this case is not unlike others adopting the last-served defendant rule. The Sixth Circuit adopted the last-served rule in a case involving similar facts, where an earlier-served defendant filed a defective notice of removal but consented to a later-served defendant's removal notice. See Brierly, 184 F.3d 527 (6th Cir. 1999). In concluding that a first-served defendant could consent to a later-served defendant's removal petition, despite its own failure to properly remove, the Sixth Circuit explained, "[g]iven the rule of unanimity, holding otherwise would vitiate the removal application of the later-served defendants and thereby nullify our holding that later-served defendants are entitled to 30 days to remove the case to district court." Id. at 533 n. 3.

For all of the reasons discussed above, the Court finds that Removal Notice II properly removed this case to federal court.

2.     Federal Subject Matter Jurisdiction

Plaintiff next argues that Removal Notice II fails to establish federal question jurisdiction, necessitating remand to state court.  Because courts construe the removal statute strictly, Defendants have the burden of demonstrating federal subject matter jurisdiction.  See Gaus, 980 F.2d at 566.

Federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd v. Construction Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983). Plaintiff brings all six causes of action in his Complaint under state law.

Despite the absence of a federal claim in Plaintiff's well-pleaded complaint, Defendants nonetheless argue that federal question jurisdiction exists based on the complete preemptive effect of either the Carmack Amendment, 49 U.S.C. §14706 and/or the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, et seq.  Defendants raise the preemptive effect of the Carmack Amendment as a defense to Plaintiff's state law claims. Ordinarily, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption [sic], even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (emphasis in original). Although courts usually defer to the plaintiff's pleading decisions because he is "master of his complaint," "there exist a handful of extraordinary situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." Hall v. North American Van Lines, 476 F.3d 683, 687 (9th Cir. 2007) (internal quotations omitted).  Accordingly, the "artful pleading" doctrine holds that a well-pleaded state law claim presents a federal question for removal purposes when a federal statute completely preempts that area of law.  Id.

Defendants contend that the Carmack Amendment completely preempts Plaintiff's state law causes of action because it provides a "uniform national liability policy for interstate

carriers." Id. (quoting Hughes Aircraft Co. v. North American Van Lines., Inc., 970 F.2d 609, 613 (9th Cir. 1992)).   In fact, the Ninth Circuit has conclusively held that the Carmack Amendment completely preempts contract claims alleging loss of or damage to property by an interstate carrier.  Id.

Nonetheless, Plaintiff disputes that the Carmack Amendment completely preempts his claims based on three grounds.  First, Plaintiff alleges that his contract with Defendants was an *intra*state storage contract, rendering the Carmack Amendment inapplicable.  Second, Plaintiff argues that even if the Carmack Amendment governs his contractual claims, the amount in controversy is insufficient to satisfy the federal jurisdictional requirement.  Third, Plaintiff contends that his state law claims are "separate and independent harms" of his contract with Defendant, warranting remand to state court.  The Court addresses each of Plaintiff's arguments in turn.

### a.   Essential Interstate Character of Plaintiff's Contract

The Court disagrees that Plaintiff's contract with Defendants was purely intrastate. Whether transportation is interstate or intrastate under the Interstate Commerce Act "is determined by the essential character of the commerce, manifested by the shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." Southern Pac. Transp. Co. v. I.C.C., 565 F.2d 615, 617 (9th Cir. 1983) (quoting the Interstate Commerce Commission). The fact that a segment of the transportation performed by Defendants was intrastate does not alter the essential interstate character of the contract.  See New York, N. H. & H.R. Co. v. Nothnagle, 346 U.S. 128, 130 (1953) ("[n]either continuity of interstate movement nor isolated segments of the trip can be decisive" in determining whether a transaction falls within the ambit of the Interstate Commerce Act); Chubb Group of Ins. Companies v. H.A. Transp., 243 F. Supp. 2d 1064, 1068 n. 3 (C.D. Cal. 2002) (holding that the Carmack Amendment applied to the intrastate inland portion of a shipment even though a separate bill of lading was issued for that portion of the trip); Greenwald v. Pan American World Airways, Inc., 547

F. Supp. 159, 162 (S.D.N.Y. 1982) (finding that "character of commerce" was interstate, even though defendant's liability stemmed from intrastate leg of transport).      Smallwood contracted with Defendants for the storage of some of his household goods and the interstate shipment of other belongings to the UAE.  (Compl. ¶ 14.)  Plaintiff clearly intended to ship some of his possessions in interstate commerce.  Despite Plaintiff's averments in his Motion to Remand, it appears on the face of the Complaint that only one contract existed.  (See Compl. ¶ 8 ("this lawsuit arises from *a* contract for moving, storage, and shipping services . . . " (emphasis added)).)  Plaintiff alleges that Defendants' negligence in *both* its storage and interstate shipping obligations led to injury.  Therefore, the Court concludes that the essential character of Plaintiff's contract with Defendants was interstate.

b.      Amount in Controversy

The Ninth Circuit has conclusively held that the Carmack Amendment completely preempts state law claims for breach of contract and negligent performance of an interstate shipping contract.  Hughes Aircraft Co., 970 F.2d at 613; Hall, 476 F.3d at 688.  Plaintiff nonetheless argues that the Carmack Amendment does not preempt his breach of contract and negligence claims (first and sixth causes of action) because they allege damage to his property of less than $10,000.  Because 28 U.S.C. § 1337(a) only gives federal district courts original jurisdiction over Carmack Amendment claims of over $10,000, Plaintiff correctly contends that the Court may not exercise removal jurisdiction under 28 U.S.C. § 1441(a) if his claims do not meet the jurisdictional amount in controversy.

In a removed case, however, the amount of damages claimed by the plaintiff in his complaint controls.  See Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 375 (9th Cir. 1997).  "There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end."  Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–290 (1938)).  In his Complaint, Plaintiff seeks $10,000,000 in special and general damages on each of his negligence and breach of contract causes of action, well above the jurisdictional minimum

1    required for the Court to exercise original jurisdiction.  The Carmack Amendment permits the

2    recovery of special or consequential damages if they were foreseeable as ordinary, natural

3    consequences of a breach when the contract was made.  See Hall, 476 F.3d at 689 n. 6.

4    Plaintiff himself argues that criminal liability under UAE law, out of which his damages arise,

5    was a foreseeable consequence of Defendants' negligence and breach of contract in

6    shipping, rather than storing, his firearms.  (See Compl. ¶¶ 71–73, 125.)  Thus, Plaintiff's

7    Complaint clearly alleges above $10,000 in both general and special damages recoverable

8    under the Carmack Amendment.

9

10                    c.    Separate and Independent Harms

11        Plaintiff finally argues that the Carmack Amendment does not preempt his claims

12   because they are "separate and independent harms" distinct from the loss of or damage to

13   his goods.  Plaintiff relies on a Northern District of California case, Roberts v. North American

14   Van Lines, 394 F. Supp. 2d 1174 (N.D. Cal. 2004) to support his argument, but misconstrues

15   the court's reasoning there.  In Roberts, the court found that the Carmack Amendment did

16   not completely preempt the plaintiffs' state law claims because they were based on conduct

17   separate and distinct from the delivery, loss of, or damage to goods.  Id. at 1182.  The

18   plaintiffs did not allege any misdelivery, loss of, or damage to their goods.  Rather, they

19   brought claims for beach of contract, violation of the California Consumers Legal Remedies

20   Act, and violation of the California Unfair Business Practices Act.  The plaintiffs predicated

21   their state law claims entirely on the defendant's failure to comply with federal regulations

22   governing interstate moves.[4]

23        In contrast, Plaintiff's negligence and breach of contract claims are based on conduct

24   related to the interstate misdelivery of goods.  In his first cause of action for negligence,

25   Plaintiff argues that Defendants "fail[ed] to exercise reasonable care in the storage and

26   shipping of Smallwood's possessions" by negligently shipping and delivering items meant for

27   ──────────────────────

28        [4]    Roberts went on to hold that the plaintiff's state law claims were subject to field
     preemption, in part because they were expressly predicated on violations of federal law.  394
     F. Supp. 2d at 1184.

08cv2196 BTM (RBB)

1   storage.  In his sixth cause of action, Plaintiff alleges that Defendants breached their contract

2   by failing to properly store his weapons and failing to ensure that only his possessions

3   designated for shipment were, in fact, shipped.  Thus, Plaintiff's negligence and breach of

4   contract claims clearly relate to the delivery of his goods.  Therefore, the Carmack

5   Amendment completely preempts Plaintiff's first and sixth causes of action.

6          Even if the Carmack Amendment does not preempt Plaintiff's other state law causes

7   of action,[5] the Court would still have had original jurisdiction over Plaintiff's breach of contract

8   and negligence claims under 28 U.S.C. § 1337(a).  Accordingly, removal jurisdiction is proper

9   under 28 U.S.C. § 1441(a) and the Court may exercise supplemental jurisdiction over

10  Plaintiff's other state law claims pursuant to 28 U.S.C. § 1367(a).[6]

11         For the reasons explained above, the Court finds that Removal Notice II satisfied the

12  procedural requirements for removal and the Carmack Amendment completely preempts

13  Plaintiff's negligence and breach of contract claims.  Consequently, removal jurisdiction is

14  proper.  The Court, therefore, **DENIES** Plaintiff's Motion to Remand.

15

16  B.     Motion to Extend Time

17         Atlas moves to extend time to respond to Plaintiff's Complaint.  Federal Rule of Civil

18  Procedure 81 prescribes the time limits for responsive pleading in removed actions.  A

19  _____

20         [5]     The Court addresses the preemptive effect of the Carmack Amendment on
      Plaintiff's other claims below in Part C.3.
21

22         [6]     Because the Carmack Amendment completely preempts Plaintiff's negligence
      and breach of contract claims, the Court does not need to reach the issue of whether
23    COGSA applies to completely preempt Plaintiff's claims for removal jurisdiction purposes.
      Nonetheless, the Court finds that COGSA does not relate to Plaintiff's claims.  COGSA only
24    applies within the "tackle-to-tackle" period.  46 U.S.C. § 30701, Notes, Sec. 7; see also
      Continental Insurance Co. v. Kawasaki Kisen Kasha, Ltd., 542 F. Supp. 2d 1031, 1034 (N.D.
25    Cal. 2008); Regal-Beloit Corp. v. Kawasaki Kisen Kasha, Ltd., 557 F.3d 985, 991 (9th Cir.
      2009) ("By its terms, COGSA covers transport between a foreign and American port 'from
26    the time when the goods are loaded on to the time when they are discharged from the ship' -
      commonly referred to as 'tackle-to-tackle.'") (quoting 46 U.S.C. § 30701, Notes, Sec. 1(e)).
27    Plaintiff contends, and it appears from the face of his Complaint, that none of his claims
      relate to wrongful actions or damages occurring at sea.  Moreover, in their Opposition to
28    Plaintiff's Motion to Remand, Defendants do not refute Plaintiff's argument that COGSA is
      irrelevant.  Therefore, the Court concludes that Defendants have not met their burden of
      establishing federal subject matter jurisdiction based on COGSA.

defendant who did not answer before removal must answer or present other defenses or objections within the longest of three periods: (1) 20 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief; (2) 20 days after being served with the summons for an initial pleading on file at the time of service; or (3) 5 days after the notice of removal is filed.  Fed. R. Civ. P. 81(c)(2)(A)–(C).

Plaintiff served its initial pleading on Atlas on November 12, 2008.  Plaintiff allegedly allowed Atlas an extension of time, until December 19, 2008, to respond to his Complaint in state court.  (Mazzella Decl. ¶ 7.)  Although Allied Van and SIRVA filed Removal Notice I on November 26, 2008, Atlas claims that it first learned that the case had been removed on December 16, 2008.  Thereafter, on December 30, 2008, Atlas filed the instant Motion to Extend Time to Respond  together with an Ex Parte Motion for an Order Shortening Time for Hearing on the Motion to Extend Time.  On January 6, 2009, the Court granted Atlas's application to shorten time.  However, because Atlas's Motion to Extend Time was inextricably intertwined with Plaintiff's Motion to Remand, the Court continued Atlas's Motion in order to hear it together with Plaintiff's Motion.

Atlas argues that good cause exists under Federal Rule of Civil Procedure 6(b)(1)(B) for an extension of time because its failure to respond constituted excusable neglect.  Specifically, Atlas contends that its neglect in responding was excusable because it did not know that the case had been removed to federal court, Plaintiff had agreed to an extension of time to respond in state court, and Atlas's counsel was ill during the weeks immediately following Allied Van and SIRVA's initial attempt at removal.

Plaintiff opposes Atlas's Motion solely on the basis that Atlas failed to timely join in removal.  Consequently, Plaintiff argues, Rule 81 is irrelevant.  As the Court determined above in its order on Plaintiff's Motion to Remand, however, Removal Notice II properly removed this case to federal court.  Atlas timely joined in Removal Notice II, at which point it had not yet answered Plaintiff's Complaint in state court.  Thus, Rule 81 applies.  Atlas is now outside all three response time periods set forth in Rule 81(c)(2), so its motion for an extension of time pursuant to Rule 6(b)(1)(B) is appropriate.

08cv2196 BTM (RBB)

1    The Court finds good cause to extend Atlas's time to respond to Plaintiff's Complaint.

2    Generally, a party requesting an enlargement of time must demonstrate good faith and a

3    reasonable basis for not complying with the specified time limit.  See Arthur Anderson & Co.

4    v. Bank of America (In re Four Seasons Sec. Laws Litigation), 493 F.2d 1288, 1290 (10th Cir.

5    1974).  Atlas's belief that this action remained pending in state court and its counsel's illness

6    constitute reasonable bases for its failure to comply with the Rule 81 time limits.

7    Furthermore, Atlas acted in good faith by promptly moving for an extension of time and

8    joining in Allied Pickfords's Notice of Removal.  Thus, Atlas's failure to act was excusable

9    neglect within Rule 6(b)(1)(B) and good cause exists to allow Atlas an enlargement of time

10   to respond to Plaintiff's complaint.  The Court **GRANTS** Atlas's Motion to Extend Time to

11   Respond to Plaintiff's Complaint and  **ORDERS** Atlas to file a responsive pleading within 20

12   days of the filing of an amended complaint.

13

14   C.    Motions to Dismiss

15   The Court also has before it two Motions to Dismiss, one filed by Allied Pickfords and

16   the other filed by SIRVA and Allied Van.  First, Allied Pickfords argues that this Court may

17   not exercise personal jurisdiction over it because Plaintiff failed to properly serve it with

18   process.  Second, both Motions allege that the Court lacks general or specific personal

19   jurisdiction over all three Defendants.   Third, the Motions contend that the Carmack

20   Amendment preempts all of Plaintiff's claims, subjecting them to dismissal.  Fourth, both

21   Motions urge the Court to apply the doctrine of forum non conveniens.  Finally, the three

22   Defendants argue that the Court should compel arbitration in the UAE if it denies the Motions

23   to Dismiss.

24

25         1.    Service of Process on Allied Pickfords

26   Allied Pickfords first moves to dismiss Plaintiff's Complaint for insufficient service of

27

28

process under Federal Rule of Civil Procedure 12(b)(5).[7]   Before a federal court may exercise personal jurisdiction over a defendant, service of process must be proper. <u>Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S. 97, 104 (1987).  If a defendant challenges the method of service of process, the plaintiff bears the burden of proving its sufficiency under Federal Rule of Civil Procedure 4.  <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir. 2004).  The Court concludes that Plaintiff has failed to meet this burden.

As the Court determined above, Plaintiff's initial attempt to serve Allied Pickfords on October 31, 2008 was ineffective.  Following removal, Plaintiff alleges that he attempted to serve Allied Pickfords pursuant to Rule 4(h)(2) and Rule 4(f)(2)(A).  Rule 4(h)(2) permits service on a foreign corporation in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery.  Rule 4(f)(2)(A) allows a foreign defendant to be served:

> [I]f there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is calculated to give notice . . . as prescribed  by the foreign country's law for service in that country in an action in its courts of general jurisdiction.

The UAE is not a party to the Hague Convention and the parties agree that no other internationally agreed upon means of service exist between the United States and the UAE. Accordingly, Rule 4(f)(2)(A) encompassed two requirements for proper service on Allied Pickfords by Plaintiff: (1) the method of service must have been reasonably calculated to give notice, and (2) the method must have been one prescribed by UAE law for service in the UAE in an action in the UAE courts of general jurisdiction.

Plaintiff alleges that his method of service was both reasonably calculated to give notice and acceptable pursuant to the laws of the UAE.  Plaintiff claims that he delivered, via private courier, his state court complaint, summons, and other documents to the Allied Pickfords office in Abu Dhabi on December 22, 2008.  Plaintiff's signed process receipt

---

[7]   The Court rejects Plaintiff's contention that Allied Pickfords waived its right to contest the validity of service because it also argues other grounds for dismissal in its Motion to Dismiss.  As Defendant correctly points out, "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." Fed. R. Civ. P. 12(b).

08cv2196 BTM (RBB)

1  shows that the documents were addressed to the "manager," but received by an Allied

2  Pickfords employee who indicated that he would forward the documents to the manager.

3  (Douglas Aff., Ex. A.)

4          Allied Pickfords argues that Plaintiff's service was improper on several grounds. First,

5  Allied Pickfords claims that Plaintiff's service was not reasonably calculated to provide notice

6  of the action because it did not include a federal summons and lacked exhibits cited in the

7  Complaint. Second, Allied Pickfords alleges that the service was defective under UAE law

8  because it was not delivered through the proper diplomatic channels, it was given to a lower-

9  level employee, and it was not translated into Arabic. Allied Pickfords does not contend that

10  it lacked actual notice of Plaintiff's action, nor that the service of process deficiencies caused

11  it to suffer prejudice.

12          First, the Court agrees with Allied Pickfords that Plaintiff's service of the state court

13  summons and Complaint was not reasonably calculated to give Defendant notice of the case.

14  Although Plaintiff's failure to attach referenced exhibits to the complaint was harmless, see

15  Chan v. Society Expeditions, 39 F.3d 1398, 1404 (9th Cir. 1994) ("[t]echnical defects in a

16  summons do not justify dismissal unless a party is able to demonstrate actual prejudice"),

17  his inclusion of a state, rather than federal, summons rendered the service ineffective.

18  Where a plaintiff has not served a defendant prior to removal by a co-defendant, the federal

19  court must issue new process. Beecher v. Wallace, 381 F.2d 372, 373 (9th Cir. 1967).

20  Following removal, service of process is technically ineffective if a plaintiff serves a defendant

21  with a state court summons instead of a federal court summons. Dean Marketing, Inc. v.

22  AOC Intern. (U.S.A.) Ltd., 610 F. Supp. 149, 152 (E.D. Mich. 1985). Here, Allied Van and

23  SIRVA filed a Notice of Removal on November 26, 2008. Plaintiff did not attempt to serve

24  Allied Pickfords until approximately one month later, on December 22, 2008. Therefore,

25  Plaintiff should have served a federal, rather than state, summons on Allied Pickfords.

26  Plaintiff's failure to provide a federal summons rendered his service not reasonably

27  calculated to give Allied Pickfords notice of the action.

28          Second, the Court concludes that Plaintiff's method of service did not comply with

20

UAE law.  Article 5 of the UAE Civil Procedure Law, as cited by Allied Pickfords, requires that service of process be effected by either (1) a "summoner" (court bailiff), or (2) a private company appointed by the Ministry of Justice.  (Jones Aff. ¶¶ 13, 15.)  According to Allied Pickfords, the Ministry of Justice has appointed only one private company, ARAMEX, to serve process in the UAE.

Plaintiff does not dispute Article 5's requirement, nor does he contend that he used a summoner, ARAMEX, or any other company appointed by the Ministry of Justice to serve process.  Rather, Plaintiff only argues that he followed the "general practice"of using non-appointed private couriers to serve.  The Court rejects Plaintiff's contention that he need not have followed Article 5 as written.  Rule 4(f)(2)(A) specifically requires that a foreign defendant be served "as *prescribed by the foreign country's law* for service in that country in an action in its courts of general jurisdiction."  However service may operate in practice in the UAE, Rule 4(f)(2)(A) specifically requires that  plaintiffs follow the written, prescribed law of the foreign jurisdiction. Thus, Plaintiff failed to comply with Article 5 of the UAE Civil Procedure Law when he used a non-appointed private courier to serve Allied Pickfords.

Article 9(2) of the UAE Civil Procedure Law, as cited by Defendant, also compels plaintiffs to deliver notice of suit to the "legal representative" of a corporation, to his agent, or, if these individuals are absent, to the legal representative's office staff.  (Jones Aff. ¶ 18.) Allied Pickfords claims that its legal representative is its "general manager."  Plaintiff does not argue that he attempted service on the "general manager" of Allied Pickfords.  Rather, Plaintiff only addressed his summons and complaint to the "manager" of the Abu Dhabi office. Thus, Plaintiff likewise failed to comply with the "legal representative" requirement set forth in Article 9(2).

The Court rejects Allied Pickford's contention that Article 9(7) of the UAE Civil Procedure Law necessarily requires a foreign plaintiff to give his summons to the undersecretary of the Ministry of Justice to convey to a UAE defendant through the proper "diplomatic channels."  (See Jones Aff. ¶¶ 11–13.)  Article 9(7) appears to require that a UAE plaintiff convey his summons to the undersecretary of the Ministry of Justice to serve on *non-*

UAE defendants through the proper diplomatic channels.  It is not clear that Article 9(7) would, therefore, require a *non*-UAE plaintiff to give his summons to the undersecretary of the Ministry of Justice for service on a *UAE* defendant.  Because of this lack of clarity, the Court declines to find Plaintiff's service of process improper on that ground.

The Court also disagrees with Allied Pickfords that Article 4 of the UAE Civil Procedure Law necessarily obligates a foreign plaintiff to serve a translated version of his summons and complaint.  (<u>See</u> Jones Aff. ¶ 10.)  Based solely on Article 4 as cited by Allied Pickfords, the Court finds it unclear whether documents served by a foreign party on a UAE defendant through a private appointed process server must be translated into Arabic. Although Article 4 declares Arabic the official language of the UAE courts, this Court cannot decisively determine that a foreign complaint *must* be translated into Arabic prior to service on a UAE defendant.

Therefore, the Court declines to find that service of process was ineffective because of the lack of exhibits attached to the Complaint, or based on Article 4 or Article 9(7) of the UAE Civil Procedure Law.  Nonetheless, Plaintiff's failure to attach a federal summons to the Complaint, and his failure to follow Articles 5 and 9(2) of the UAE Civil Procedure Law rendered his service of process on Allied Pickfords  ineffective pursuant to Rule 4(f)(2)(A).

Where service of process is insufficient, however, courts have broad discretion to dismiss the action or retain the case and quash the service that has been made on the defendant.  <u>Cranford v. United States</u>, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005) (citing <u>Montalbano v. Easco Hand Tools, Inc.</u>, 766 F.2d 737, 740 (2d Cir. 1985)).  Typically, if a reasonable prospect exists that the plaintiff may ultimately be able to serve the defendant properly, the court will quash the service.  <u>Montalbano</u>, 766 F.2d at 740.

The Court finds it appropriate to quash service on Allied Pickfords rather than dismiss the action.  Allied Pickfords does not allege any prejudice arising out of Plaintiff's failure to properly serve it.  Given the pendency of this Motion to Dismiss, the Court finds good cause under Rule 4(m) to extend Plaintiff's time to serve Allied Pickfords.  Moreover, Rule 4(f)(2)(A) is only one of several ways to serve a foreign defendant.  A reasonable prospect exists that

08cv2196 BTM (RBB)

Plaintiff may still serve Allied Pickfords properly.  Thus, the Court **QUASHES** service on Allied Pickfords and **ORDERS** Plaintiff to effect service on Allied Pickfords by any proper method of service within 60 days of entry of this order.  If Plaintiff fails to properly effect service on Allied Pickfords within 60 days, Allied Pickfords may renew its motion to dismiss for improper service under Rule 12(b)(5).

        2.        <u>Personal Jurisdiction over Allied Pickfords, Allied Van and SIRVA</u>

Allied Pickfords, Allied Van, and SIRVA all argue that the Court lacks personal jurisdiction over them, necessitating dismissal of Plaintiff's complaint pursuant to Rule 12(b)(2).   Although Plaintiff has not yet properly served Allied Pickfords, the Court nevertheless considers its personal jurisdiction over this Defendant.  Both Allied Pickfords and Plaintiff have briefed the issue, and, if Plaintiff effectively serves process in the future, the Court will still need to determine whether it can exercise personal jurisdiction over Allied Pickfords before proceeding with the case. Thus, the Court evaluates its personal jurisdiction over Allied Pickfords, Allied Van and SIRVA.

        a.        <u>Standard</u>

The plaintiff bears the burden of proving the facts necessary to establish personal jurisdiction over a defendant.  <u>Rio Properties, Inc. v. Rio Intern. Interlink</u>, 284 F.3d 1007, 1019 (9th Cir. 2002) (citations omitted).  The Court applies a two-step test to determine whether it may exercise in personam jurisdiction over a defendant.  <u>Taubler v. Giraud</u>, 655 F.2d 991, 993 (9th Cir. 1981).  First, the Court considers the California long-arm statute.  <u>Id.</u> (citation omitted).   Second, the Court evaluates whether application of the statute is consistent with due process.  <u>Id.</u> (citation omitted).  Because the California long-arm statute allows for personal jurisdiction over defendants to the full extent permitted by due process, the Court may directly consider whether personal jurisdiction over Defendants comports with due process.  <u>Id.</u>

The Court may exercise either "general" or "specific" personal jurisdiction over a

defendant.  In order for a court to exercise *general* personal jurisdiction over a defendant, due process requires that the defendant have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Minimum contacts exist where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, even if the case is unrelated to those contacts.  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1171 (9th Cir. 2006) (citation omitted).  In evaluating whether a corporation has sufficient minimum contacts with a forum, courts consider such factors as "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  Id. at 1172 (quoting Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)).

"A court may exercise *specific* jurisdiction where the suit 'arises out of' or is related to the defendant's contacts with the forum and the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Tuazon, 433 F.3d at 1169 (emphasis added) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).   Additionally, the exercise of specific personal jurisdiction in any particular case must be "reasonable."  Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

On a motion to dismiss for lack of personal jurisdiction, a defendant may in part challenge the plaintiff's theory of jurisdiction and in part challenge the facts supporting the jurisdictional theory.  See Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).  A district court may receive only written submissions to determine personal jurisdiction over a defendant.  See Data Disc, Inc., 557 F.2d at 1285.  Where the district court receives solely limited written materials, the plaintiff need only make a prima facie showing of jurisdictional facts to defeat a defendant's motion to dismiss.  Id.  "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true."  Dole Food Co., Inc. v. Watts, 303 F.3d

24

1104, 1108 (9th Cir. 2002) (quotations omitted).  Any conflicts in the parties' affidavits must

be resolved in the plaintiff's favor.  Id.

                      b.    Allied Pickfords

       The Court initially finds that it cannot exercise general personal jurisdiction over Allied

Pickfords.  Allied Pickfords lacks sufficient minimum contacts with California to establish

general personal jurisdiction here.  The corporation is a citizen of the UAE, with its principal

place of business there.  Additionally, it does not own any real or personal property in

California, nor is it licensed or registered to do business in this state. (Garlick Aff. ¶¶ 3–4.)

Finally, Allied Pickfords does not have any bank accounts in California and does not conduct

any direct advertising or business solicitation here.  (Id. at ¶¶ 5–6.)  Plaintiff's bare assertion

that Allied Pickfords, together with the other Defendants, represents that it maintains offices

and agents "in every part of the globe," cannot alone  establish substantial or continuous and

systematic contacts with California.

       Plaintiff argues, however, that the Court may exercise specific personal jurisdiction

over Allied Pickfords because it purposely availed itself of the privilege of doing business in

California.  Plaintiff contends that he communicated with Allied Pickfords's representatives

throughout the process of scheduling the storage and shipment of his goods from California

to the UAE.  Thus, Plaintiff argues, even if an agent of Allied Pickfords (and not Allied

Pickfords itself) performed the actual storage and shipment functions in California, the

corporation nevertheless acted to purposefully avail itself of the privileges and benefits of the

forum out of which his claim arises.

       Allied Pickfords counters that it neither purposefully directed any activity towards

California nor purposefully availed itself of the benefits and privileges of the laws of this state.

Allied Pickfords contends that it performed no acts or transactions in California.  Furthermore,

Allied Pickfords argues that all of Plaintiff's claims relate to activities which occurred in the

UAE and resulted in alleged damages there.

       The Court finds that Allied Pickfords purposefully availed itself of the privileges and

benefits of the California forum.  The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  Burger King Corp., 471 U.S. at 475 (quotations omitted).  Here, however, "the contacts proximately result from actions by the defendant *himself* that create[d] a substantial connection with the forum state."  Id. (emphasis in original).

An Allied Pickfords representative, Danita D'Mello, allegedly initially contacted Plaintiff via email to arrange his move from California to the UAE.  (Smallwood Decl. ¶ 7.)[8]  Plaintiff also claims, and Allied Pickfords does not dispute, that he had several subsequent email and phone discussions with D'Mello regarding both shipping some of his items to Abu Dhabi and storing some of his items in California. (Smallwood Decl. ¶ 8.)  D'Mello arranged for movers to visit Plaintiff's home in order to pack up and deliver his belongings for storage or shipping. (Smallwood Decl. ¶ 9–10; Garlick Aff., Ex. B.)  Thus, Allied Pickfords's contacts with the forum resulted from its own affirmative actions to secure a storage and shipping contract, part of which was performed in California, with Plaintiff.

The Court also rejects Allied Pickfords's contention that Plaintiff's claims do not relate to or arise out of its contacts with California.  Plaintiff alleges that Defendants' negligent segregation of his shipping and storage items, in California, led, in part, to the injuries he suffered.  Therefore, Plaintiff's suit, at least in part, arises out of or is related to Allied Pickfords's contacts with California.

Allied Pickfords could reasonably expect to be hailed into California over any disputes arising out of negligent performance of its contract with Plaintiff.  The Court finds that Plaintiff has made a prima facie showing of jurisdictional facts sufficient to defeat Allied Pickfords's Motion to Dismiss for lack of personal jurisdiction.

_____

[8]    Defendants object to Smallwood's affidavit, claiming that the Court may not consider an affidavit on a 12(b) motion.  However, on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits.  See Data Disc, 557 F.2d at 1285.  The Court considers uncontroverted allegations in the complaint as true, and any conflicts in the affidavits are resolved in Plaintiff's favor.  Dole Food Co., Inc., 303 F.3d at 1108.

1

2

          c.     Allied Van and SIRVA

3       As with Allied Pickfords, the Court finds that it cannot exercise general personal

4 jurisdiction over Allied Van and SIRVA.  As Plaintiff's complaint recognizes, both Allied Van

5 and SIRVA are citizens of the state of Delaware with their principal places of business in

6 Illinois.  (Compl. ¶¶ 4–5.) Furthermore, Defendants have submitted affidavits indicating that

7 both SIRVA and Allied Vans (1) are not licensed or registered to do business in California;

8 (2) do not own any real or personal property in California; (3) do not have any bank accounts

9 in California; and (4) do not conduct any direct advertising or solicit any business in

10 California.   (Coolidge Aff. ¶¶ 3–6; Baker Aff. ¶¶ 3–6.)

11       The Court disagrees with Plaintiff that Defendants' websites alone establish general

12 personal jurisdiction.  Although both websites promise an extensive network of agents and

13 employees performing relocations nationally and internationally, these generalized assertions

14 do not show that Defendants had substantial or continuous and systematic contacts with

15 *California.*  "[M]ere web presence is insufficient to establish personal jurisdiction."  Holland

16 America Line, Inc. v. Wartsila North America, Inc., 485 F. 3d 450, 460 (9th Cir. 2006).  The

17 Court cannot conclude, solely on the basis of Defendants' websites, that they have

18 substantial or continuous and systematic contacts with California.

19       Alternatively, Plaintiff argues that bases for specific personal jurisdiction over

20 Defendants exist.  Plaintiff alleges that SIRVA is the parent company to Allied Van and Allied

21 Pickfords.  Plaintiff further claims that Allied Van and SIRVA collectively do business with

22 Allied Pickfords under the trade name "Allied International," acting as agents of one another

23 to conduct international relocation, moving, and shipping services together.  (Compl. ¶ 6.)

24 Additionally, Plaintiff argues that Defendants utilize local agents in California to perform

25 contracts originating or concluding in this state.  Plaintiff also alleges that all four Defendants

26 worked together, in this case, to perform Smallwood's storage and shipping contract.

27 (Compl. ¶ 8.)  Plaintiff admits that it is presently unclear to him which Defendants performed

28 the various services required by his contract. He contends, however, that Defendants'

relationship as agents of one another suffices to show that each corporation purposely availed itself of the privileges and benefits of doing business in California such that the Court may reasonably exercise personal jurisdiction over them.

Allied Van and SIRVA do not dispute Plaintiff's contentions that they act as agents of one another or that Allied Pickfords and Atlas are also their agents. Rather, they only generally assert that they "performed no acts or transactions in the state of California" and that Plaintiff's claims do not relate to this forum. (Defs.' Mot. to Dismiss at 10.)

Plaintiff need only demonstrate facts that, if true, would support jurisdiction over Allied Van and SIRVA. Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). A corporate principal may be subject to long-arm jurisdiction based on the acts of its corporate agent. See Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 423–424 (1977). Thus, if Plaintiff has demonstrated facts showing that the corporate agents of Allied Van and SIRVA committed acts purposefully availing themselves of the privileges and benefits of the forum out of which Plaintiff's claims arise, then they too may be subject to personal jurisdiction here.

Taking Plaintiff's uncontroverted allegations as true, as the Court must for the purposes of this Motion, Plaintiff has presented sufficient jurisdictional facts to defeat Allied Van and SIRVA's Motion to Dismiss. The Court determined above that Allied Pickfords purposefully availed itself of the benefits and privileges of the California forum when it contracted with Plaintiff to pack and store some of his items in San Diego and ship his other possessions from California to the UAE. If, as Plaintiff alleges, Allied Pickfords is a general agent of Allied Van or SIRVA, then the latter Defendants are also subject to specific personal jurisdiction in this forum.[9]

At this stage, therefore, Plaintiff has made a prima facie showing of jurisdictional facts

---

[9]   An inventory list submitted by Defendants indicates that Atlas may have performed the actual packing, storing, and shipping functions in San Diego. (See Garlick Aff., Ex. D at 2.) The inventory list also designates Atlas as an "Agent for Allied Van Lines." (Id.) If Atlas did, in fact, perform these services in California for Plaintiff as a general agent of Allied Van or SIRVA, that agency relationship could also serve as grounds upon which the Court could exercise specific personal jurisdiction over Defendants.

08cv2196 BTM (RBB)

sufficient to defeat Allied Van and SIRVA's Motion to Dismiss for lack of personal jurisdiction. The Court recognizes, however, that further discovery may reveal that Plaintiff's allegations of general agency are false or inaccurate.  Thus, the Court **DENIES** Allied Pickford's, Allied Van's, and SIRVA's motion to dismiss on the basis of a lack of personal jurisdiction without prejudice to Defendants raising the issue again on a motion to dismiss after discovery.

### 3.    Preemptive Effect of the Carmack Amendment

Defendants also argue that the Court should dismiss this case because the complete preemptive effect of the Carmack Amendment precludes all of Plaintiff's claims.  As the Court held above, the Carmack Amendment completely preempts at least Plaintiff's breach of contract and negligent shipping claims.  See Hughes Aircraft Co., 970 F.2d at 613; Hall, 476 F.3d at 688.  Thus, the Court **DISMISSES** without prejudice Plaintiff's breach of contract and negligent shipping claims.  The Court grants Plaintiff leave to amend his Complaint to restate his breach of contract and negligent shipping claims under the Carmack Amendment.

Defendants also claim, however, that the Carmack Amendment completely preempts Plaintiff's remaining state law claims for negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, breach of fiduciary duty, and fraudulent deceit.

As Defendants correctly note, "the Carmack Amendment is 'comprehensive enough to embrace responsibility for *all losses* resulting from *any* failure to discharge a carrier's duty as to *any part* of the agreed transportation." Coughlin v. United Van Lines, LLC, 362 F. Supp. 2d 1166, 1168 (C.D. Cal. 2005) (quoting Georgia, Florida, and Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196 (1916)) (emphasis in original).  "[O]nly claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption."  Smith v. United Parcel Service, 296 F.3d 1244, 1248–1249 (11th Cir. 2002).

The Court partly agrees with Defendants that the Carmack Amendment also preempts Plaintiff's breach of fiduciary duty and negligent infliction of emotional distress claims because they are not based on conduct separate and distinct from the delivery.  Plaintiff claims that Defendants breached their fiduciary duty to him when they (i) failed to transfer

his weapons into storage as agreed; (ii) failed to properly segregate the storage items from the shipping items; (iii) erroneously shipped some of the storage items to the UAE; (iv) lured Plaintiff to the port under false pretenses; and (v) abandoned Smallwood to the mercy of UAE customs officials and police without admitting their mistakes.   (Compl. ¶ 107.) Smallwood's breach of fiduciary duty cause of action arises, at least in part, out of Defendants' conduct in failing to properly deliver certain of his possessions to storage and other of his belongings to the UAE.   Thus, the Carmack Amendment preempts Plaintiff's breach of fiduciary duty claim to the extent that it is based on the erroneous storage and shipment of his goods.  Accordingly, the Court **DISMISSES** Plaintiff's breach of fiduciary duty cause of action without prejudice insofar as it is based on the conduct described in Plaintiff's Complaint ¶ 107(i)–(iii).

The Ninth Circuit has held that "the Carmack Amendment preempts a claim for intentional infliction of emotional distress to the extent that it arises from the same conduct as the claims for delay, loss or damage to shipped property." White v. Mayflower Transit, L.L.C., 543 F.3d 581, 586 (9th Cir. 2008).  Plaintiff's negligent infliction of emotional distress claim alleges that Defendants' failure to exercise reasonable care in the storage and shipping of his possessions, caused him "fear, anxiety, worry, mortification, shock, humiliation, and indignity." (Compl. ¶¶ 77–78.)  This claim arises out of the same conduct as the misdelivery of his shipped property and the Carmack Amendment preempts it. The Court **DISMISSES** Plaintiff's negligent infliction of emotional distress claim without prejudice.

Plaintiff's intentional infliction of emotional distress, defamation, and fraudulent deceit causes of action, however, are based on conduct separate and distinct from the delivery, loss of, and damage to his goods.  Plaintiff's intentional infliction of emotional distress claim asserts that Defendants' conduct in "deliberately and intentionally using [him] as a cover" for [Defendants'] own negligence and illegal actions" resulted in Plaintiff suffering "tremendous stress, fear, humiliation, indignity, and potentially physical harm."  (Compl. ¶¶ 82–83.) Specifically, Plaintiff alleges that Defendants caused him emotional harm by deceptively luring him to the port and blaming him for their own illegal conduct. (Compl. ¶ 83.)  Plaintiff

further bases his emotional harm claim on Defendants' refusal to assist him in the court process resulting in his conviction.  These actions on the part of Defendants, while perhaps prompted by and a response to their misdelivery of Plaintiff's goods, are nevertheless separate and distinct from that misdelivery.

Plaintiff's defamation claim is likewise based on conduct separate and distinct from the misdelivery of and damage to his goods.  Plaintiff's defamation claim arises solely out of the Allied International representative's alleged statements to UAE customs officials that "Smallwood requested the weapons be shipped to the UAE, effectively accusing Smallwood of violating UAE law as well as the laws of the United States and international law relating to weapons trafficking." (Compl. ¶ 92.)  Similarly, Plaintiff's fraudulent deceit cause of action claims that Defendants deceptively lured him to the port intending that he would take custody of the weapons and suffer the blame for illegally importing them.  Defendants' alleged actions in luring Plaintiff to the port and their purported statements to UAE officials constitute conduct distinct from any negligence in delivering Plaintiff's possessions.  Therefore, the Carmack Amendment does not preempt Plaintiff's intentional infliction of emotional distress, defamation, and fraudulent deceit claims.  The Court **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's intentional infliction of emotional distress, defamation, and fraudulent deceit claims, as well as his breach of fiduciary duty claim insofar as it is based on Defendants' conduct described at Plaintiff's Complaint ¶ 107(iv)–(v).

4.   Forum Non Conveniens

Defendants alternatively argue that the Court should dismiss this case entirely based on the doctrine of forum non conveniens.  Defendants allege that the United Arab Emirates is a more appropriate forum for this action.  The doctrine of forum non conveniens "involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else."  Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955).  The doctrine requires the Court to assess the availability of an adequate alternative forum, as well as whether private and public interest factors favor dismissal.  Leetsch v.

31

<u>Freedman</u>, 260 F.3d 1100, 1103 (9th Cir. 2001).  The party moving for dismissal has the burden of proving that the doctrine of forum non conveniens should apply.  <u>Id.</u>

Defendants initially claim that the United Arab Emirates is an adequate alternative forum.  The key determination is whether "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  <u>Piper Aircraft Co. V. Reyno</u>, 454 U.S. 235, 254 (1981).  Typically, "a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong."  <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1144 (9th Cir. 2001).  An alternative forum generally qualifies as adequate if the defendant is subject to service of process there.  <u>Leetsch</u>, 260 F.3d at 1103.  Courts also consider the alternative forum's jurisdiction over the case and competency to decide the legal issues involved.  <u>Id.</u>  Defendants have stipulated to accept service of process in the UAE.  (Baker Aff. ¶ 7; Coolidge Aff. ¶ 7.)

Plaintiff raises several concerns with respect to the adequacy of any UAE forum in which to adjudicate his claims.  First, Plaintiff claims that although Defendants have agreed to submit to service of process in the UAE, they have not stipulated to the foreign forum exercising personal jurisdiction over them or subject matter jurisdiction over the case.  Plaintiff also points out that Defendants have not addressed Atlas's and Allied Pickfords's amenability to service of process.  The Court notes, however, that Allied Pickfords has stipulated to service of process in the UAE upon dismissal of this action.  (Garlick Aff. ¶ 7.)  Plaintiff also expresses concern that a UAE court would not fairly consider his claims because of his criminal conviction and potential deportation.

Although the Court cannot say with certainty that the UAE forum would be inadequate, it finds that Defendants have not met their burden to show that the California forum is so completely inappropriate and inadequate that it would be better to stop the litigation here.  The private and public interest factors also weigh in favor of preserving Plaintiff's choice of forum.   Private interest factors include:(1) the ease of access to sources of proof, (2) compulsory process to obtain the attendance of hostile witnesses, (3) the cost of transporting friendly witnesses, and (4) problems that may interfere with an expeditious trial. <u>Leetsch</u>, 260

32

F.3d at 1104 (quotation omitted).  Although Defendants correctly point out that witnesses and evidence in this case will be located in the UAE, it is equally true that some witnesses and evidence will be located in California.  Thus, the parties are likely to suffer some problems accessing sources of proof whether the litigation proceeds in California or in the UAE.  Similarly, the parties will incur costs of transporting friendly witnesses if the case goes forward in either forum.  Defendants do not address the UAE process for obtaining the presence of American witnesses there.  Because Defendants have the burden of proving that the doctrine of forum non conveniens should apply, this factor weighs against them.  Moreover, Plaintiff may be deported from the UAE as a result of his criminal conviction. (Ahammadi Decl. ¶ 5.)  If Plaintiff is deported, it will be exceedingly difficult for him to pursue his case in the UAE and it will very likely interfere with an expeditious trial.  Thus, the private interest factors weigh in favor of maintaining the litigation here.

Public interest factors also do not support application of the forum non conveniens doctrine in this case.  Public interest factors include: (1) administrative difficulties flowing from court congestion, (2) imposition of jury duty on the people of a community that has no relation to the litigation, (3) local interest in having localized controversies decided at home, (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action, and (5) the avoidance of unnecessary problems in conflicts of law.  Leetsch, 260 F.3d at 1105.  The issue of court congestion does not weigh in favor of either party.   The second and third factors weigh equally in favor of either California or the UAE, since part of the controversy took place in each forum.  On the fourth and fifth factors, Defendants argue that California has no interest in trying this case because UAE law will apply.  Plaintiff, however, contends that California law will govern the case.  Because the Court cannot determine which jurisdiction's law will apply at this stage of this litigation, it finds that this factor also weighs no more in favor of the UAE than California.

Defendants have not shown that the forum chosen by Plaintiff, California, is so completely inappropriate and inconvenient that it is better to stop the litigation here and let it begin again in the UAE.  Therefore, the Court declines to dismiss this case on grounds of

33

1    forum non conveniens.

2

3        5.    Arbitration Clause

4        Allied Pickfords, Allied Van, and SIRVA alternatively argue that the Court should

5    compel arbitration in accordance with the "Contract Conditions" set forth in the "Acceptance

6    of Quotation" Plaintiff signed to authorize the shipment of his goods from California to Abu

7    Dhabi.  (See Hession Decl., Ex. A).  Under "Settling Disputes," the Contract Conditions state:

8            Any disputes in relation to the conclusion, implementation, interpretation,

9            cancellation, dissolution, or invalidity of the contract or stemming therefrom or

10           connected thereto in any form shall be referred to arbitration in accordance

11           with the Dubai Chamber of Commerce and Industry Commercial Conciliation

12           and Arbitration Regulation.  (Defs.' Mot. to Dismiss at 18.)

13       Defendants argue forcefully in their Motions to Dismiss, and the Court agrees, that the

14   Carmack Amendment applies to preempt Plaintiff's breach of contract, negligence, negligent

15   infliction of emotional distress and breach of fiduciary duty claims.  Accordingly, the Court has

16   dismissed these claims and granted Plaintiff leave to amend his Complaint to restate these

17   claims under the Carmack Amendment.

18       Because the Carmack Amendment applies to this case, however, the arbitration

19   clause included in the bill of lading is unenforceable.  Although the Ninth Circuit itself has not

20   yet addressed this issue, at least two other circuits have held that the Carmack Amendment

21   prohibits enforcement of forum selection clauses included in bills of lading.  See Aacon Auto

22   Transport, Inc. v. State Farm Mutual Automobile Insurance Co., 537 F.2d 648, 654 (2d Cir.

23   1976); Aluminum Products Distributors, Inc. v. Aacon Auto Transport, Inc., 549 F.2d 1381,

24   1385 (6th Cir. 1977); see also Kyodo U.S.A., Inc. v. Cosco N. A.M., Inc., 2001 WL 1835158,

25   at *3 (C.D. Cal. 2001).  In State Farm, the carrier included an arbitration clause in the bill of

26   lading requiring that any claims against the carrier be settled by arbitration in New York City.

27   Similarly, the bill of lading in this case purports to require that any claims arising from the bill

28   of lading be subject to arbitration in the UAE.  The Carmack Amendment specifically directs

1  that a shipper may bring an action against a delivering carrier in any judicial district or state

2  through which the carrier operates.  49 U.S.C. § 14706(d)(1).  A shipper may also bring an

3  action against a carrier responsible for loss or damage to his goods in any judicial district in

4  which the loss or damage is alleged to have occurred.  49 U.S.C. § 14706(d)(2).  As the

5  Second Circuit explained in State Farm, a carrier could not, consist with the Carmack

6  Amendment, contract with a shipper to limit its liability to *suit* in a particular jurisdiction.  State

7  Farm, 537 F.2d at 655.  Likewise, a carrier may not contract with a shipper to limit its liability

8  to *arbitration* in a specific forum.  Id.  The Court, therefore, does not reach Plaintiff's other

9  arguments against application of the arbitration clause.  The arbitration clause is an

10 impermissible limitation of liability under the Carmack Amendment and this Court will not

11 enforce it.

12

13                                      **III.  CONCLUSION**

14     For the reasons explained above, the Court **DENIES** Plaintiff's Motion to Remand

15 [Docket No. 5].  Defendant Atlas's Motion to Extend Time to Respond to Plaintiff's Complaint

16 [Docket No. 6] is **GRANTED.**  Atlas must file a responsive pleading to Plaintiff's amended

17 complaint within 20 days of the filing of the amended complaint.

18     The Court **GRANTS** Defendant Allied Pickford's Motion to Dismiss [Docket No. 18]

19 and Defendants Allied Van's and SIRVA's Motion to Dismiss [Docket No. 2] insofar as they

20 seek dismissal of Plaintiff's negligence and negligent infliction of emotional distress claim

21 (first cause of action), breach of contract claim (sixth cause of action), and breach of fiduciary

22 duty claim (fourth cause of action) insofar as it is based on the conduct described at Plaintiff's

23 Complaint ¶ 107(i)–(iii).  The Court **DISMISSES** these causes of action without prejudice and

24 grants Plaintiff leave to reassert his claims as possible under the Carmack Amendment.  The

25 Court **GRANTS** Plaintiff leave to file an amended complaint within 20 days of the entry of this

26 Order. The Court otherwise **DENIES** Defendant Allied Pickford's Motion to Dismiss or

27 Compel Arbitration [Docket No. 18] and Defendants Allied Van's and SIRVA's Motion to

28 Dismiss or Compel Arbitration [Docket No. 2].

08cv2196 BTM (RBB)

1    The Court **QUASHES** service on Allied Pickfords and **ORDERS** Plaintiff to effect

2    service on Allied Pickfords by any proper method within 60 days of entry of this order.  If

3    Plaintiff fails to properly effect service on Allied Pickfords within 60 days, Allied Pickfords may

4    renew its motion to dismiss for improper service under Rule 12(b)(5).

5    The Court **GRANTS** Plaintiff's Motion for Leave to File Excess Pages [Docket No. 23]

6    and **GRANTS** Allied Van and SIRVA's Motion for Leave to File Excess Pages [Docket No.

7    29].

8    The Court hereby sets trial in this matter to begin on **Monday, May 10, 2010, at**

9    **9:00am**.   The parties are to appear for an in-person Early Neutral Evaluation ("ENE")

10   Conference before Magistrate Judge Brooks on **November 6, 2009 at 10:00am**.  Magistrate

11   Judge Brooks will issue a Case Management Conference Order setting forth other pretrial

12   dates.  The Court hereby sets a Pretrial Conference for **Tuesday, April 27, 2010 at 3:30pm**.

13   Except as set forth herein, no further motions to dismiss shall be filed except by leave of the

14   Court after a status conference.

15

16   **IT IS SO ORDERED.**

17   DATED:  September 29, 2009

18

19   Honorable Barry Ted Moskowitz
     United States District Judge

20

21

22

23

24

25

26

27

28

36